IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Jay Gorodetzer                          :
1108 Greentree Lane                     :
Penn Valley, PA 19072                   :
                                        :
                                        :          CIVIL ACTION NO.
                                        :
        v.                              :
                                        :
                                        :
Philadelphia Media Network Inc.         :
400 North Broad Street                  :
Philadelphia, PA 19130-4015             :
                                        :

## COMPLAINT

### PRELIMINARY STATEMENT

1.      This is an action by Plaintiff brought under the Copyright Act, 17 U.S.C. §§ 101
*et seq*, to recover damages arising from infringement of Plaintiff's copyright in his creative work
by Defendant and to enjoin Defendant from future infringement. Defendant reproduced,
distributed, and publicly displayed, through an Internet website and print media, a photograph
owned by Plaintiff.

### JURISDICTION

2.      Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1338.

3.      Venue in this district is proper under 28 U.S.C. § 1391(b).

### PARTIES

4.      Plaintiff Jay Gorodetzer (hereinafter "Plaintiff") is a photographer and owner of
Jay Gorodetzer Photography residing in Narberth, PA.

5.      Defendant Philadelphia Media Network Inc. (hereinafter "PMN") is a corporation
with a principal place of business located at 400 North Broad Street, Philadelphia, Pennsylvania
19130. PMN owns and distributes the daily newspapers The Philadelphia Inquirer (hereinafter

"Inquirer") and Philadelphia Daily News (hereinafter "Daily News"). PMN also owns and operates the website Philly.com, which provides online access to news articles found in the Inquirer and Daily News. PMN purchased the Inquirer, Daily News, and Philly.com from Philadelphia Media Holdings, LLC during a bankruptcy auction on or about October 8, 2010. Although certain actions described herein occurred prior to PMN's October 8, 2010 purchase, including the initial copyright infringement on August 7, 2010, PMN has become the successor to Philadelphia Media Holdings, LLC for liability arising from this initial copyright infringement. Further, PMN has continued to infringe Plaintiff's copyright after its October 8, 2010 purchase.

## STATEMENT OF FACTS

6.      In 1996, Plaintiff worked as an independent contract photographer in the Philadelphia area.  During that time period, he contracted out his services to a variety of business entities, including the Inquirer.

7.      In or around September 1996, Plaintiff attended a dinner at the General Wayne Inn in Lower Merion, Pennsylvania, hosted by the owners, Guy Sileo (hereinafter "Sileo") and James Webb (hereinafter "Webb").  At the time he attended the dinner, Plaintiff was not on any type of work assignment and he attended this dinner on his own free time.

8.      At this dinner, Plaintiff created a photograph of Sileo and Webb (hereinafter "the Photograph").  Plaintiff used his own camera to create the Photograph.

9.      Plaintiff became the sole and valid copyright owner of the Photograph as soon as it was created.

10.      On or about December 26, 1996, Webb was murdered at the General Wayne Inn. Sileo was charged with the murder of Webb on or about October 25, 2000.

11.     In 1998, Plaintiff became an employee of the Inquirer through its Suburban Staff. In 2000, Plaintiff was promoted to the position of Sports Photography Editor with the Main Unit of the Inquirer and held this position until 2007.

12.     During 2001, the media attention surrounding the prosecution of Sileo intensified.

13.     Knowing that the Inquirer intended to publish a story regarding the Sileo prosecution, Plaintiff offered the Photograph to the Inquirer for a one-time use in its story.

14.     On or about July 22, 2001 and again on August 2, 2001, the Inquirer ran the story about the murder and published Plaintiff's Photograph as part of the story.  A true and correct copy of the second page of the July 22, 2001, article that contains the Photograph is attached as Exhibit "A".

15.     Plaintiff authorized the Inquirer to only use the Photograph for the specific articles that ran on July 22, 2001 and August 2, 2001.  At no time did Plaintiff authorize the Inquirer to use his Photograph on any other dates.

16.     Plaintiff and the Inquirer did not sign a licensing agreement for use of the Photograph. Signing a licensing agreement is customary for a media outlet looking to acquire reuse rights of a photographic image.

17.     The Inquirer also did not compensate Plaintiff for use of the Photograph.

18.     The source caption for the Photograph that corresponded to these two stories stated: "COPYRIGHT Jay Gorodetzer NOT FOR USE BY DAILY NEWS".

19.     As further proof of Plaintiff's continued copyright and ownership of the Photograph, Plaintiff was able to obtain compensation from other media outlets that utilized the Photograph shortly after the Inquirer first published the image.

20.     After a brief layoff in 2007 from the Inquirer, Plaintiff rejoined the Inquirer as an assistant News Editor but was ultimately laid off in 2008. Plaintiff has not been in the employ of the Inquirer since 2008.

21.     On or about August 7, 2010, Plaintiff discovered that the Inquirer had used the Photograph on the front page of its newspaper in conjunction with a story about Sileo receiving a new trial.   A concurrent story with the Photograph was published on Philly.com also on or about August 7, 2010.

22.     The source caption for the image with respect to the August 7, 2010 story simply said "File Photograph".

23.     Plaintiff did not authorize the Inquirer to use the Photograph in the August 7, 2010 story.

24.     The online story has been, and is still, accessible since on or about August 7, 2010, and can be found at http://articles.philly.com/2010-08-07/news/24998931_1_sileo-three-judge-superior-court-panel-new-trial.  See Exhibit "B".

25.     Soon after the republication of the Photograph, in August or September 2010, Plaintiff used the Philly.com online contact form to request proper credit for the Photograph. Plaintiff never received a reply.

26.     In August or September, 2010, Plaintiff contacted the then Director of Photography at the Inquirer, Hai Do (hereinafter "Do"), to discuss the situation. During this conversation, Plaintiff explained the background of the Photograph and that he still retained the sole ownership and copyright of the Photograph. Plaintiff requested that the Photograph be properly credited as his photograph, that the Inquirer compensate him for its use, and that the image be removed from Philly.com.  Do refused all requests, unreasonably insisting that the Inquirer had full ownership over reuse of the Photograph.

27.     On or about September 29, 2010, Plaintiff next sent an e-mail to Stan Wischnowski, Editor at the Inquirer, and Sandra Long, then Vice President of Newsroom Operations at the Inquirer. This e-mail explained the background of the Photograph, including that Plaintiff retained ownership and the copyright of the Photograph. In the e-mail, Plaintiff

requested reasonable compensation for use of the Photograph and that the Inquirer not distribute, share, or reuse the Photograph without Plaintiff's consent. The e-mail is attached as Exhibit "C".

28.     On or about October 10, 2010, Plaintiff received a reply to the September 29, 2010 e-mail from Hai Do, who again claimed that the Inquirer had the right to reuse the Photograph without compensating Plaintiff. This response is attached as Exhibit "D".

29.     In or around November and December 2010, Plaintiff began e-mail and phone correspondence with the new Director of Photography at the Inquirer, Michael Mercanti. Plaintiff explained the situation regarding the Photograph on several occasions to Mercanti. Mercanti did not directly address these issues in any reply to Plaintiff.

30.     On or about November 9, 2011, Plaintiff attempted to restart the conversation with Mercanti by sending him an e-mail. Mercanti did not reply to this e-mail.

31.     On or about February 28, 2012, Plaintiff obtained a valid registration for the Photograph from the U.S. Copyright Office under Registration Number VA 1-811-532. See Exhibit "E".

32.     On or about February 28, 2012, Plaintiff directed his counsel to send a notice to Stan Wischnowski, Editor at the Inquirer, informing him that the unauthorized reproduction of the Photograph violated Plaintiff's copyrights of the Photograph, and requesting that Plaintiff be compensated for its use, that the Photograph be removed from Philly.com, and that PMN cease and desist from further infringement of Plaintiff's copyright.

33.     In response to Plaintiff's counsel, on or about March 1, 2012, PMN stated that it had valid ownership of the Photograph and that it would not acquiesce to Plaintiff's requests.

34.     On or about June 26, 2012, Plaintiff sent a letter to William Marimow, Editor of the Philadelphia Inquirer, again explaining the situation and again requesting compensation for use of the Photograph, its removal from Philly.com, and reimbursement for reasonable attorney's

fees.  Plaintiff asked Mr. Marimow to respond within seven (7) days from the date of the letter.

The June 26, 2012 letter is attached as Exhibit "F".

   35.  As of the date of the filing of this lawsuit, Mr. Marimow has never responded.

## FIRST CAUSE OF ACTION – COPYRIGHT INFRINGEMENT

## VIOLATION OF 17 U.S.C. §§ 501 *et seq*

36.     Plaintiff incorporates the above and below paragraphs as though fully set forth herein at length.

37.     Plaintiff is, and at all relevant times has been, the sole copyright owner under U.S. Copyright Law with respect to the Photograph. The Photograph is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights to Plaintiff as specified in Exhibit E.

38.     Without authorization, PMN reproduced, distributed, and/or publicly displayed the Photograph.

39.     Plaintiff did not authorize PMN's copying, display, or distribution of his works during the time periods alleged herein.

40.     PMN knew the infringed work belonged to Plaintiff and that it did not have permission to exploit Plaintiff's work.

41.     PMN knew its acts constituted copyright infringement.

42.     PMN's conduct was willful within the meaning of the Copyright Act.

43.     As a result of its wrongful conduct, PMN is liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. § 501.

44.     Plaintiff is entitled to recover damages, which include his losses and any and all profits PMN has made as a result of its wrongful conduct. 17 U.S.C. § 504. Alternatively, Plaintiff is entitled to statutory damages under 17 U.S.C. § 504(c).

45.     In addition, because PMN's infringements were willful, the award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

46.     Plaintiff is entitled to recover his reasonable attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

WHEREFORE, Plaintiffs request judgment as follows:

(1)     That the Court enter an order preliminarily and permanently enjoining and restraining PMN and its agents, along with those in active concert with PMN, from copying, reproducing, displaying or making any other infringing use or infringing distribution of Plaintiff's copyright in the Photograph, in accordance with 17 U.S.C. § 502;

(2)     That the Court enter an order that all infringing materials in the possession, custody, or control of PMN be impounded and destroyed, in accordance with 17 U.S.C. § 503;

(3)     That the Court order PMN to pay Plaintiff's general, special, actual, and/or statutory damages as follows: Plaintiff's damages and PMN's profits pursuant to 17 U.S.C. § 504(b), or in the alternative, enhanced statutory damages pursuant to 17 U.S.C. § 504(c)(2), for PMN's willful infringements of Plaintiff's copyrights;

(4)     That, in accordance with 17 U.S.C. § 505, this Court order PMN to pay Plaintiff its costs in this action, including an award of its reasonable attorney fees; and

(5)     That the Court award other, further, and general relief as it deems just and proper.

(6)     Plaintiff also demands a jury trial.

LAW OFFICES OF DAVID J. BERNEY

_____
DAVID J. BERNEY, ESQUIRE
Pa. Bar ID No. 67882
8 Penn Center
1628 JFK Boulevard, Ste. 1000
Philadelphia, PA 19103
djberney@berneylaw.com
215-564-1030 (office)
215-751-9739 (fax)

Dated: July 5, 2012                    Attorney for Plaintiff

# Exhibit A

Case 2:12-cv-03796-GP   Document 1   Filed 07/05/12   Page 11 of 22



Set atop wheels, the Rockingham House was ready to be moved Friday from its location in Franklin Township, Hunterdon County, to a new site in the township. For three months in 1783, Gen. George Washington and his wife, Martha, lived in this house, where Washington wrote his farewell address to his armies at the end of the Revolutionary War. Here, Jennifer Saar, a tour guide, videotapes the home.

DANIEL HULSHIZER / Associated Press

# Gen. Wayne slaying about to go to trial

**MURDER TRIAL** from B1

make the arrest.

"The prosecution certainly waited several years to file the charges, and I don't think anything changed in that period of time," he said. "I'm hoping jurors agree that if the prosecution had a doubt, why shouldn't they?"

Castor will lay out a scenario that includes secret recordings, alleged comments Sileo made about entertaining thoughts of being rid of Webb, and what Castor believes is a clear motive: The partners, in a move typical in joint ventures, had taken out life-insurance policies in which the survivor was the beneficiary of

more than a half-million dollars. For a restaurant deeply in debt, it was a powerful incentive, Castor said.

"In a murder investigation, you look for people with a motive and then try to exclude them," he said. "We figure [Sileo] had a motive, and we never could exclude him."

Winters, though, says the insurance money hardly made a dent in the partners' debt. And, he has said, Webb was crucial for the success of the restaurant, which was sold at auction in November. (That sale has not been finalized, however, and the property remains on the market.)

But perhaps most damaging for Sileo, Castor says, is that Sileo lied about owning a second gun, which investigators believe was used to shoot the 31-year-old Webb. Police did find a gun in Sileo's house, but it was not the murder weapon.

Sileo insisted to police — and later to a grand jury — that he did not own a second gun. However, on secret recordings made with the help of an informant, Sileo said he got rid of the second gun and urged a former employee to lie if questioned by detectives.

Last year, Sileo was convicted of lying to a grand jury and is serving a sentence of one to

three years. The trial jury, though, cannot learn about his incarceration unless Sileo testifies — something Castor thinks he has to do.

"He will have to explain why he lied about the gun," Castor said. "I would be very surprised if they allowed the evidence about owning another gun to go unexplained."

Winters acknowledged last week that he will call Sileo to the stand, and he said Sileo is eager to get the trial started.

Castor, who has 59 names on his witness list, expects the trial to last two weeks.

Ralph Vigoda's e-mail address is rvigoda@phillynews.com



Guy Sileo and James Webb (right) are shown at a September 1996 cigar dinner at the General Wayne Inn. Sileo will go on trial Monday for Webb's murder later that year.

JAY GOROCETZER / Inquirer Staff Photographer



Bruce L. Castor Jr., Montgomery County district attorney, is prosecuting the case.

SCOTT HAMRICK / Inquirer Suburban Staff

## HARDWOOD FLOORING 99¢
OAK • EXOTICS • NEVER PREFINISH • ETC
LumberLiquidators.com
203 Moorerer Rd., Claymont, DE
**302-798-1400**

## Do you have PSORIATIC ARTHRITIS?
A medical Advani Research firm in Center City is interviewing men & women (between 15-50) who have been diagnosed by a physician with Psoriatic Arthritis. Qualified participants will be paid $75 for 1-hour of their time. Call 1-800-220-3730 ext. 4500 - Art

## DONATE THAT CAR!
**Free Pickup • Tax Deduction** "fair market value"
**We Do All Paperwork • Running or Not"** "Restrictions apply"
Pennsylvania Council of the Blind has helped blind people become productive in the workplace since 1940.
**Vehicles, Real Estate, Lots, Boats, RV's, and more!**
**800-822-3490**

## 13 just became a lucky number.
# 4.25% APY
13 Month Certificate of Deposit

**FIRSTRUST BANK**
**800-220-BANK**
firstrust.com

Member FDIC

*Annual Percentage Yield (APY) effective as of the date of this publication and may change at any time. $1000 minimum deposit required ($500 for IRAs). There is a penalty for early withdrawal. Offer available to retail and business depositors with a maximum investment of $500,000. Firstrust reserves the right to revise or rescind this offer at any time. May not be combined with any other offer.

AOL Keyword: Firstrust Bank

# New Jersey Notebook

## A lively comeback to a misinformed credit report

Gabriel R. Ricci, 82, had just bought the bench saw he had wanted for years and needed a shed to store it in. The Turnersville man applied for credit at Home Depot in late June. Two weeks later, Monogram Credit Card Bank of Georgia, the firm handling his application, informed him that he had been denied ... because he was dead.

"I was flabbergasted," Ricci said. "I check the obits every day. How can I be dead?"

Ricci said he called five 800 numbers to inform the credit firm that he was alive. On the phone, he said, "I would ask, 'How could I be dead if I'm talking to you?' " The reply: "We can't tell you. That's privileged information."

Monogram has not returned calls seeking comment on Ricci's application.

Finally, Ricci said, he gave up on the idea of getting a shed for his bench saw. "What would a dead man do with a shed?"
— Will Van Sant in Cherry Hill

## McGreevey works on support among women

During his campaign swing last week, Jim McGreevey, the Democratic candidate for governor, took time out for a barbecue at the Dennis Township home of Mary D'Arcy Bittner.

The purpose was twofold: to help promote two local female candidates and to improve on his somewhat lackluster support from women in his unsuccessful 1997 gubernatorial campaign.

Bittner is chairwoman of the Women's Democratic Caucus of South Jersey, a group she formed just over a year ago to help promote women for local, county and state offices. The group's focus is developing a political and financial network for women in Cape May, Atlantic and Cumberland Counties.

Bittner, a candidate for the state Assembly in the First District two years ago, says she is trying to remove obstacles that keep women from achieving a larger role in the male-dominated world of politics.

"There's a lot of support for men, but too often, women are just the sacrificial lambs put up in races that aren't winnable," says Bittner, who lost her race but not her love for politics.
— Tom Turcol in Cape May County

## Tossing mud (and sand) in the Third District

The piles of sand and mud sucked up from the bottom of the Delaware River have sullied Gloucester County political campaigns for two years now.

Last week, dredge material became fodder for Sen. Raymond Zane and Stephen Sweeney's early — and vitriolic — fight for the Third District state Senate seat. The 28-year Senate veteran criticized Sweeney, the county's freeholder director, for not blocking a Delaware River Port Authority plan to transfer dredge material to a West Deptford waterfront golf course.

"If Steve Sweeney is as opposed to the dredging of the Delaware as he says he is," Zane asked, "then why didn't he voice his opposition to Dave Shields, the mayor of his hometown [West Deptford]?"

Sweeney has long been an opponent of the federal government's $311 million plan to deepen the river.

But in a pilot program designed to prove to municipalities that dredge material can be put to good use, the DRPA has forged an agreement to pay West Deptford $1.1 million to move 185,000 cubic yards of dried muck a half-mile for use at RiverWinds, the township's waterfront golf resort.

"But who am I to tell a municipality it can't accept a million dollars if the testing comes out all right?" Sweeney said. "If this stuff is bad, we won't allow it. I never said there wasn't beneficial reuse for some of this stuff. The senator's wrong; my position hasn't changed.

"The arsenic that was found [at RiverWinds] is a reminder of exactly how safe [dredging] is."
— Kaitlin Gurney and Jake Wagman in West Deptford

## Area Votes in Congress
ROLL CALL REPORT SYNDICATE

WASHINGTON — Here is how Philadelphia-area members of Congress were recorded on major roll-call votes last week:

### House

■ **Faith-based programs.** The House, voting 233-198, Thursday approved a bill (HR 7) to launch President Bush's "faith-based initiative" by broadening the types of social services that religious charities may deliver with taxpayers' money. The bill lets taxpayers who do not itemize deduct up to $25 for charitable contributions, rising to $100 in 2010, and sets up tax-advantaged accounts that the working poor can use for purposes such as buying a first home or attending college.

A yes vote was to pass the bill.

Voting yes: Michael N. Castle (R, Del.), James C. Greenwood (R, Pa.), Frank A. LoBiondo (R, N.J.), Joseph R. Pitts (R., Pa.), H. James Saxton (R., N.J.), Christopher H. Smith (R., N.J.), Patrick J. Toomey (R., Pa.) and Curt Weldon (R, Pa.).

Voting no: Robert B. Andrews (D., N.J.), Robert A. Brady (D., Pa.), Robert A. Brady (D., Pa.), Chaka Fattah (D., Pa.), Joseph M. Hoeffel (D., Pa.) and Tim Holden (D., Pa.).

■ **Faith-based programs.** The House, voting 195-234, Thursday replaced a Democratic bid to remove language from HR 7 (above) that lets religious charities use one's religious beliefs as a criterion in hiring staff to administer social services with federal funds. Democrats also sought to stipulate that the new law could not supersede state and local civil rights statutes

outlawing bias against gays and lesbians and other minorities.

A yes vote backed the Democrats' proposed changes.

Voting yes: Andrews, Borski, Brady, Fattah, Holden and Hoeffel:

Voting no: Castle, Greenwood, LoBiondo, Pitts, Saxton, Smith, Toomey and Weldon.

■ **Flag desecration.** Voting 298-125, the House Tuesday approved a constitutional amendment (HJ Res 36) giving Congress and state legislatures authority to outlaw the physical desecration of the American flag. The measure would need approval from the Senate and three-fourths of the states.

A yes vote backed the constitutional amendment.

Voting yes: Andrews, Castle, Holden, LoBiondo, Pitts, Saxton, Smith, Toomey and Weldon.

Voting no: Borski, Brady, Fattah, Greenwood and Hoeffel.

■ **Flag desecration.** Voting 100-324, the House Tuesday rejected a constitutional amendment that empowered Congress to outlaw the physical desecration of the American flag, but only if the statute was "not inconsistent" with First Amendment protection of political speech. This occurred during debate on HJ Res 36 (above).

A yes vote backed the constitutional amendment.

Voting yes: Borski, Brady, Fattah, Greenwood and Hoeffel.

Voting no: Andrews, Castle, Holden, LoBiondo, Pitts, Saxton, Smith, Toomey and Weldon.

■ **China trade.** The House voted Thursday to continue open trade with China, as requested by President Bush. The authority will stand until China joins the World Trade Organization and gains full trading privileges around the globe. On this vote,

members defeated, 169-259, a measure (HJ Res 50) to refuse Bush's request and impose higher tariffs on Chinese imports.

A yes vote was to oppose normal trade with China.

Voting yes: Borski, Brady, Fattah, Hoeffel, Holden, LoBiondo and Smith.

Voting no: Andrews, Castle, Greenwood, Pitts, Toomey and Weldon.

Not voting: Saxton.

■ **Prison abortions.** Voting 169-253, the House refused Tuesday to lift a ban on taxpayer funding of abortions for women in federal prison except to save the life of the mother or in cases of rape. This occurred during debate on a bill (HR 2500) appropriating $38.5 billion for the State, Justice and Commerce Departments and related agencies in fiscal 2002.

A yes vote was to allow publicly funded abortions for women in federal prisons.

Voting yes: Andrews, Brady, Fattah, Greenwood and Hoeffel.

Voting no: Borski, Castle, Holden, LoBiondo, Pitts, Saxton, Smith, Toomey and Weldon.

■ **U.N. peacekeeping.** Voting 71-359, the House refused Wednesday to end U.S. financial support of United Nations peacekeeping forces, which are now in several areas of conflict. The vote during debate on HR 2500 (above) preserved an $844 million fiscal 2002 request by Bush for U.N. peacekeeping.

A yes vote was to end American involvement in U.N. peacekeeping.

All Philadelphia-area representatives voted no.

■ **Hispanic count.** On a 215-215 tie, the House refused Wednesday to require more details on the place of birth of U.S. Hispanics than is now found in reports from the 2000 census. The cen-

sus "short form" did not request the identity of all Hispanics' native countries.

A yes vote was to spend $2 million to quickly develop more data on U.S. Hispanics' place of birth.

Voting yes: Andrews, Borski, Brady, Fattah, Hoeffel and Holden.

Voting no: Castle, Greenwood, LoBiondo, Pitts, Saxton, Smith, Toomey and Weldon.

### Senate

■ **Energy workforce.** Voting 56-44, the Senate Wednesday killed a plan for taxpayer-funded grants and fellowships to help higher education remedy a growing shortage of skilled energy workers. The $10 million expenditure was to have been taken from a California water program. The vote came during debate on a $23.7 billion energy and water appropriations bill (HR 2311) for fiscal 2002.

A yes vote opposed shifting the funds to financial aid for energy education.

Voting yes: Joseph R. Biden Jr. (D., Del.), Thomas Carper (D., Del.), Jon Corzine (D., N.J.), and Robert G. Torricelli (D., N.J.).

Voting no: Rick Santorum (R., Pa.) and Arlen Specter (R., Pa.).

■ **Bankruptcy bill.** The Senate voted, 52-46, Tuesday to require the General Accounting Office to study the impact of impending changes in bankruptcy law and report back to Congress within two years. This occurred as the House and Senate moved to resolve differences about the legislation (HR 333; S 420).

A yes vote was to monitor the impact of the legislation.

Voting yes: Biden, Corzine.

Voting no: Carper, Santorum, Specter and Torricelli.

# Exhibit B

The Inquirer | DAILY NEWS

Sign In | Register | Mobile | Home Delivery

# philly●com | article collections

[ ] search

**News** | Sports | Entertainment | Business | Restaurants & Food | Living | Health | Classifieds | DealYo

South Jersey | Philly.com Express | Nation | World | Lottery | Politics | Religion | Weird News | Blogs | Editorial | Education | Science | Obituaries

Collections ● James Webb

Ads by Google



A Doctor Could Use Your Help. Be Prepared Now With Career Training. PRACTICAL NURSING ● MEDICAL ASSISTANT ● MEDICAL BILLING & CODING.  Get Info Now!

### More Like This »

New trial halted in Main Line restaurant killing
September 1, 2011

New trial for inn owner convicted of partner's murder
August 6, 2010

### Find More Stories »

James Webb

# New trial ordered in General Wayne Inn murder

Recommend 0

August 07, 2010 | By Anthony R. Wood, Inquirer Staff Writer

When he won a conviction in the high-profile General Wayne Inn murder case largely on circumstantial evidence, prosecutor Bruce L. Castor Jr. made an observation that turned out to be prescient.

"I don't think this is the end of it," he said.

This week, a three-judge Superior Court panel ordered a new trial for Guy A. Sileo Jr. in the slaying of his business partner and the inn's executive chef, James Webb, on the night of Dec. 26, 1996, in a third-floor office there.

For the historic Main Line venue, long considered a national landmark among ghost-hunters, it was a true-life Gothic horror tale, one resulting in Sileo's conviction in 2001.

Image 2 of 2    View Gallery



Three months before the slaying, Guy A. Sileo Jr. (left) and chef James Webb featured...

Story continues below.

Ads by Google

**Don't Buy An Annuity...** Until You Watch This Video Report! Top Annuity Flaws* - Warning www.SeniorAnnuityAlert.com

**Recover Your Losses** Investors Who Lost Money to Fraud May Be Eligible for Claim. www.Stockbroker-Fraud.com/

But in a split decision handed down Tuesday, the panel said the conviction was tainted because the jury did not receive adequate instructions on Sileo's alibi.

"This is my worst nightmare come true," said Carol Casey of Folsom, Delaware County, a close friend of Webb and his wife, Robin.

"I think the opinion is complete nonsense," said Castor, now a Montgomery County commissioner. He has a framed drawing on his office wall of himself delivering closing arguments in that case, almost exactly nine years ago.

Castor said Friday that while Sileo insisted he was not present when Webb was killed, he could produce no corroborating evidence on his whereabouts. Sileo testified that he was at the restaurant with Webb that night but left to go to a bar before the slaying occurred.

Castor said that had the defense tried to make an alibi case, "I would have used it against them."

It might be a while before any retrial occurs.

Castor's successor as district attorney, Risa Vetri Ferman, said her office would appeal the decision to the larger court and expected to prevail.

Jules Epstein, Sileo's appeal attorney, was unavailable Friday for comment.

Sileo, who turns 43 this month, was sentenced to life for fatally shooting Webb, then 31, in the back of the head.

He remains at a medium-security facility in Somerset County, according to the Department of Corrections.

The 300-year-old building on Montgomery Avenue in Lower Merion now houses the Chabad Center for Jewish Life, including a synagogue and Lubavitch outreach center.

In 1996, Webb and Sileo were operating the inn as a restaurant, but were having financial problems.

The prosecution contended that Sileo was under pressure to repay a loan and killed Webb to collect on a life-insurance policy naming Sileo as the beneficiary.

Ads by Google

**Arrest Records: 2 Secrets**
1) Type Name and State 2) Unlimited Secrets About Anyone. Takes Seconds
InstantCheckmate.com

**Malpractice Legal Attorneys**
Free Consultation by a Local Injury Lawyer for Malpractice Injury cases
www.InjuryHelpLineAttorney.com

**Edgar Snyder & Associates**
Injured and Need an Attorney? Free Case Review - Contact Us Now.
www.EdgarSnyder.com

**1** | 2 | Next »

# Exhibit C

September 29, 2010


To: Sandra Long (slong@phillynews.com), Stan Wischnowski (swischnowski@phillynews.com), Bill Ross (bross@local-10)

Re: Payment Due for Photo Re-Use

Via EMAIL and US Mail

Dear Sandra and Stan,

I am writing to resolve an issue in which The Philadelphia Inquirer and Philly.com recently published a photograph, to which I own the rights, and refuses to compensate me for the re-use of the image.

Last month, to accompany a story about the new trial for Guy Sileo, who was convicted of killing his General Wayne Inn business partner, Jim Webb, my photo of Sileo and Webb appeared on Philly.com and on page A1 of The Inquirer ("Chef's slaying reopened" 8/7/10).  This photo was made on my own time, in September of 1996, when I was a guest at a dinner at the General Wayne Inn hosted by the owners.

Following the Dec. 26, 1996 murder, I allowed the Inquirer to use the photo that I made due to its news value and uniqueness.  I did not ask for compensation for that use.  The photo ran in the paper and several other media

outlets, including CNN obtained copies of the image and subsequently published the image.  After contacting those companies to tell them that this image was mine and not The Philadelphia Inquirer's, they paid me for the use of the image.

The caption that is attached to the image in The Inquirer's computer system clearly says that the image is ©Jay Gorodetzer and not for use by The Daily News -- indicating that this is not an Inquirer Photo.  However, the photo credit that appeared under the photo when it ran last month reads, "File Photo."

Here is how the imbedded caption reads:

"…Guy Sileo (L) is the only suspect in the murder of General Wayne Inn partner James Webb (R). The two are shown here during a Sept. 1996 cigar dinner at the restaurant. D.A. Bruce Castor (MONTCO) said Sileo will be charged with first-degree murder.  Photo COPYRIGHT Jay Gorodetzer  NOT FOR USE BY DAILY NEWS"

I spoke to The Inquirer's director of photography, Hai Do, in an effort to correct the photo credit issue.  I requested that, if The Inquirer was going to re-use an image of mine, they can, at least, provide proper credit.  Hai insisted that the image was property of The Philadelphia Inquirer.  I explained the circumstances upon which the photo was made and Hai again challenged me on the ownership of the image.  I then asked how much the paper would pay for reuse of an image by a freelancer on page A1.  Hai told

me that it depended on the news value but did not offer a dollar amount.  Clearly this photo has news value if it was used to illustrate a story that ran at the top of A1.

Hai refused to recognize that I own the photo.  He claimed that I might have taken the photo with company equipment.  I reminded him that I was never issued company equipment.  He then said that because I was a staff member at the time the photo was made that the image belongs to the paper.  I fail to see the logic or the legality of that reasoning.

I told Hai that I would like to send a bill to the paper for the use of the image, but that I wanted to be fairly compensated and I asked him to tell me what the going rate is.  He told me not to send a bill because the image was property of The Inquirer.  He then ended the conversation by hanging up on me.

After contacting current Inquirer photo editors, the consensus is that I never made a deal with the paper that allowed unlimited use of my image.  As an employee at the paper for over 20 years, I would probably allow the use of the photo in an effort to show readers a one-of-a-kind image showing business partners sharing a cigar prior to the murder of one by the other.

Since I am no longer an employee, I do not see the need to be so generous as to allow The Inquirer and Philly.com to use my images without being fairly compensated.

At the time the photo ran I also sent an email to Philly.com which simply requested the correct photo credit.  I used the Philly.com online contact form and I have not heard back from them.

I have attached an invoice seeking $650 in compensation for the use of my image.  I also request that the image not be distributed, shared or reused without my permission and compensation.

Thank you,


Jay Gorodetzer
1108 Greentree Lane
Narberth, PA  19072
610-664-5975

INVOICE

September 29, 2010

Invoice # 092910inq

Client:        The Philadelphia Inquirer and Philly.com
Fee:           $650
Purpose:       Use of image on A1 of The Inquirer and on Philly.com
               Subject: Guy Sileo and Jim Webb ("Chef's slaying reopened, 8/7/10)

Payable to:    Jay Gorodetzer
               1108 Greentree Lane
               Narberth, PA  19072

# Exhibit D

# The Philadelphia Inquirer

philly●com

Oct. 20, 2010

Mr. Jay Gorodetzer

1108 Greentree Lane

Narberth, PA 19072

Dear Jay,

I am writing to respond to your email of September 29, 2010 relating to our use of a photo. As I'm sure you are aware, when a staff photographer submits a photo taken on his own time for our use, we compensate the photographer and then have full rights to use the photo. It is my understanding that you were either compensated for that use or you voluntarily submitted the photo to us for our use without restriction, and we therefore have the right to further use without additional compensation. If you have any document that indicates you were providing the photo for one-time use, please forward them to me.

With regard to credit for the photo, enclosed is a copy of page B4 of The Philadelphia Inquirer published on Sunday, July 22, 2001 with a photo of Guy Sileo and James Webb published under the byline "JAY GORODETZER/Inquirer Staff Photographer." It's our practice to only credit "File Photograph" and not the photographer's name for photo taken from the archive 10 years or older as was the case of this photo when we published again on page A1 of the Saturday, August 7, 2010 edition.

Best regards,

Hai Do

Director of Photography

Published by Philadelphia Media Holdings, LLC • 400 North Broad Street • Philadelphia, PA 19130